UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

COREY LAMAR HINTON,

        Plaintiff,                       Case No. 1:21-cv-480

v.                                          Honorable Robert J. Jonker

GREGORY SKIPPER et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action which was initially brought by multiple state prisoners under 42 U.S.C. § 1983. On June 9, 2021, the Court entered an order severing the claims of each Plaintiff from those of the other Plaintiffs. The Court also directed each Plaintiff to file an amended complaint on the form required by this Court under Local Civil Rule 5.6(a). Plaintiff has complied and his case is now ready for review.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I. **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. The events about which he complains occurred at the same facility. In Plaintiff's amended complaint, he sues Warden Gregory Skipper, Health Unit Manager Brian Deeren, and Deputy Warden Fredeene Artis.

Plaintiff states that he has underlying illnesses but fails to specify the nature of those conditions. Plaintiff alleges that Defendant Skipper ignored all kites sent to him regarding preventing the spread of COVID-19 and allowed contaminated inmates to be moved to a floor with healthy prisoners. Plaintiff states that Defendant Skipper's practice of using a thermometer to screen employees for illness was ineffective and that he should have been using the Binax Now Rapid Test on correctional officers. Correctional officers ultimately brought the virus into RMI. Plaintiff states that this eventually caused him to become ill with COVID-19.

Plaintiff alleges that Defendant Artis failed to respond to any kite or to call a block rep meeting. Defendant Artis also moved inmates that had been infected with the virus to different units, spreading the virus throughout the prison.

Plaintiff states that he initially exhibited symptoms of COVID-19 in December of 2020 and requested a rapid test multiple times throughout December and in the first few days of January of 2021. Plaintiff claims that nurses Miller and Slusher both called Defendant Deeren to request a test on Plaintiff's behalf. Plaintiff states that Defendant Deeren repeatedly denied requests by inmates to be tested because the rapid test was too expensive. Plaintiff states that prison health officials believed that if all the prisoners caught COVID-19 it would result in herd immunity, which would solve the issue of COVID-19 in the prison.

On January 1, 2021, Plaintiff noticed that he was feeling ill. Plaintiff's cellmate Charles McIntosh worked on a unit where COVID-19 positive inmates were housed. When Plaintiff was moved to Unit I-4, he notified Health Care that he was sick and should not be moved to a COVID-19 free floor. Corrections Officer McNitt gave Plaintiff a direct order to move, and Plaintiff complied. Upon arriving in Unit I-4, Plaintiff discovered that it was unsanitary, flooded, and had not been cleaned following the removal of COVID-19 infected prisoners who had rioted over prison conditions.

Plaintiff requested a rapid COVID-19 test on January 2 and 3 because he was lightheaded, short of breath, coughing, and was suffering from loss of taste and smell, as well as cold sweats. On January 3, 2021, Plaintiff was so ill that one of the third shift Corrections Officers requested that Plaintiff be escorted to Health Services. However, Lieutenant Bradford refused to send Plaintiff to Health Care. On January 4, 2021, Plaintiff was feeling lightheaded and dizzy and fell in his cell. Nurse Slusher subsequently arranged for Plaintiff to be given a rapid COVID-19 test, which indicated that he was positive for COVID-19.

Plaintiff contends that the handling of the COVID-19 epidemic by Defendants violated the Eighth Amendment. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

**II.    Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

3

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.    Respondeat superior

Plaintiff alleges misconduct by various individuals who are not named as Defendants in this action and are employed as subordinates of the named Defendants. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't*

*of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. To the extent that Plaintiff asserts that the named Defendants are responsible for wrongdoing by non-party subordinate prison employees, Plaintiff fails to state a claim against them.

**IV.     Eighth Amendment**

Plaintiff's allegations against the named Defendants do not rise to the level of an Eighth Amendment violation. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every

5

unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, Plaintiff must show that he faced a sufficiently serious risk to his health or safety and that Defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

Plaintiff makes conclusory assertions against each of the named Defendants, stating that they placed prisoners at RMI at risk by failing to properly separate infected prisoners from healthy prisoners, failing to properly test for COVID-19 infection, and failing to control the spread of disease by allowing infected officers to work on the units. However, Plaintiff does not allege facts regarding the manner in which the conduct of Defendants Skipper and Artis affected him personally or that they knowingly forced him to share a cell with a COVID-19 positive prisoner. Moreover, with regard to Defendant Deeren, Plaintiff fails to allege facts showing that Deeren's refusal to allow prisoners to be tested on demand caused Plaintiff to become infected with COVID-19.

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not

akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The Court notes that the MDOC has taken significant measures to limit the threat posed by COVID-19.[1] *See* MDOC, *MDOC Response and Information on coronavirus (COVID-19)*, https://medium.com/@MichiganDOC/mdoc-takes-steps-to-prevent-spread-of-coronavirus-covid-19-250f43144337 (last visited Oct. 8, 2021).[2] The Court notes that Michigan State Industries produced masks for all prisoners and correctional facility staff to wear that can be laundered and worn again, and that each employee and prisoner received three masks each. *Id.* In addition, with regard to the quarantine and care of sick prisoners, the MDOC instituted the following:

- Facility healthcare staff will meet with prisoners who have presented with symptoms of coronavirus. The MDOC does not make the diagnosis of the coronavirus. The department is following the Michigan Department of Health and Human Services protocol.

---

[1] The Court takes judicial notice of these facts under Rule 201 of the Federal Rules of Evidence. The accuracy of the source regarding this specific information "cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also* Paul F. Rothstein, *Federal Rules of Evidence* 49 (3d ed. 2019) (citing *Matthews v. NFL Mgmt. Council*, 688 F.3d 1107 (9th Cir. 2012) (taking judicial notice of statistics on the NFL website that the plaintiff played 13 games in California over 19 years); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236–37 (3d. Cir. 2007), as amended (Nov. 20, 2007) (finding error where a district court took judicial notice of facts stated in "a party's . . . marketing material" on an "unauthenticated" website because marketing materials often lack precise and candid information and the source was not authenticated)). Moreover, "[t]he court may take judicial notice at *any* stage of the proceeding." Fed. R. Evid. 201(d) (emphasis added). Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b).

[2] Although the page is hosted on Medium.com, the MDOC specifically links to this page from their website as the location where they will provide updates and information. *See* https://www.michigan.gov/corrections/0,4551,7-119-9741_12798-521973--,00.html (last visited Oct. 14, 2021).

7

- Prisoners who test positive for the virus are isolated from the general population and any prisoners or staff they have had close contact with are identified and notified of the need to quarantine.

- Prisoners who test positive may be transferred to the department's designated quarantine unit at Carson City Correctional Facility.  This unit is completely separated from the main facility, has limited movement and access to the unit is limited.  Only a small number of designated staff work in the unit in 12-hour shifts to limit the number of people entering.  Those staff members report directly to the unit and do not enter the main correctional facility.  Prisoners transferred to the unit also stay on the unit and do not enter any other areas of the prison.

- Prisoners who have been identified as having close contact with another prisoner who tests positive, but have not tested positive for the virus themselves, will be isolated from the general population at their facility for the 14-day quarantine period.

- Co-pays for prisoners who need to be tested for COVID-19 have been waived.

- Prisoners have been urged to notify healthcare if they are sick or experiencing symptoms of illness so they can be evaluated.  Prisoners who require outside medical attention will be transported to an area hospital for treatment.

- Prisoners are considered in step-down status when they no longer have symptoms, are no longer considered contagious and have been medically cleared by our chief medical officer.

*Id.*

Plaintiff fails to allege specific facts showing that any of the named Defendants deviated from these practices in a manner which personally affected Plaintiff.  Because the facts alleged by Plaintiff fail to show that the named Defendants were deliberately indifferent to the risk of Plaintiff contracting COVID-19, his complaint is properly dismissed.

## V.     Pending motion

Plaintiff has filed a "Motion Request to Present Evidence," (ECF No. 28) which seeks to include as exhibits (1) Policy Directive 03.04.110 Control of Communicable Diseases, (2) Universal Declaration of Human Rights, (3) Health Care Records showing Plaintiff's COVID-

19 positive test result, and (4) Plaintiff's affidavit. The Court grants Plaintiff's motion and has reviewed the attached documents as part of the screening process.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   October 19, 2021              /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       CHIEF UNITED STATES DISTRICT JUDGE